STATE of Missouri ex rel. COUNTY
OF ST. CHARLES, Appellant,

v.

G. Tracy MEHAN, III and Missouri De-
partment of Natural Resources, City
of St. Peters, Mo., Respondents,

Donald S. Rosenfeld, et al. d/b/a BRR
Partnership, T. Pat Manning and Man-
ning Transport, Inc., Amicus Curiae.

STATE of Missouri ex rel. COUNTY
OF ST. CHARLES, Appellant,

v.

G. Tracy MEHAN, III and Missouri
Department of Natural Resources,
City of St. Peters, Respondents.

Nos. WD 46380, WD 46683.

Missouri Court of Appeals,
Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1993.

Application to Transfer Denied
June 29, 1993.

James Trimble, Parkville, Stephen Allen Martin, St. Charles, Thomas William Rynard, Jefferson City, for appellants.

Timothy P. Duggan, Asst. Atty. Gen., Jefferson City, Rollin J. Moerschel, St. Charles, for respondents.

Lewis C. Green, St. Louis, for amicus curiae.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

This case concerns the ability of a fourth class city to locate a landfill outside of its corporate boundaries. St. Peters is a fourth class city situated entirely within St. Charles County. St. Charles is a non-charter county of the first class. The Department of Natural Resources is an agency of the state of Missouri whose responsibilities include the administration of the "Solid Waste Disposal Act" (the "Act") found at §§ 260.200–.255. G. Tracy Mehan, III is the director of the Missouri Department of Natural Resources.

The county of St. Charles appeals the decision of the Circuit Court of Cole County dismissing its Second Amended Petition for Declaratory Judgment and holding for the city of St. Peters on its counterclaim. The case was submitted on a stipulation by the parties and the court entered its decree with findings of fact and conclusions of law on July 13, 1992. The court dismissed the Department of Natural Resources (DNR) and its director, G. Tracy Mehan, III as defendants on April 4, 1992. This appeal involves the consolidation of two separate appeals stemming from the same circuit court action. One appeal is from the court's order dismissing Mehan and DNR and the other is from the judgment in favor of the city and against the county.

St. Peters entered into a series of contracts with Quarry Holding Company whereby the city acquired fee simple title to approximately 29 acres of land on May 19, 1989. The land is a rock quarry located approximately two miles outside the corporate city limits of St. Peters and the land is located within the unincorporated area of the county. The contract of purchase stated that the land was acquired under the threat of the city's power of eminent domain to take the land involuntarily.

Sections 260.215(1) and 260.220 of the Act mandates that each city and county adopt and implement a plan for a solid waste management system. The acquisition of the land in the unincorporated portion of St. Charles is a part of St. Peters' solid waste plan and is intended to be a landfill and recycling facility.

St. Peters' original solid waste management plan was adopted by the city on February 27, 1986, and was revised on May 11, 1989. On May 23, 1989, the city applied to DNR for a permit to operate a solid waste disposal area and recycling center on the county property. DNR returned the permit application to the city as "incomplete" for failure of St. Peters to demonstrate that the site complied with local zoning in the county. St. Peters then filed suit against DNR seeking a declaratory judgment that its proposed solid waste disposal facility was exempt from St. Charles' zoning laws. The Circuit Court of Cole County dismissed the action and on appeal, this court held that the city failed to exhaust its administrative remedies and the appeal was dismissed. *St. Peters v. Department of Natural Resources*, 797 S.W.2d 514 (Mo. App.1990).

On December 21, 1990, St. Peters filed a new application with the DNR and again it was returned marked "incomplete" for the failure of the city to adequately demonstrate compliance with the local zoning requirements. Specifically, the city failed to obtain a land use permit and a sanitary landfill operating permit from the county.

An appeal from the second denial by DNR was filed by St. Peters pursuant to § 260.235.[1] There was no hearing because DNR and St. Peters agreed that DNR

---

1. All statutory references are to the Missouri Revised Statutes 1986, unless otherwise indicated.

would recognize that St. Peters was exempt from the county's zoning requirements, agreed to extend the period for making a completeness review to July 22, 1991, provided for the dismissal of St. Peters' appeal, and foreclosed the participation of those seeking to intervene. The DNR, which had previously required the city to comply with local zoning ordinances, now accepted St. Peters' argument that it was exempt from the zoning requirements of the county. St. Peters has maintained, throughout all of the proceedings, that it is not legally obligated to comply with the zoning ordinances of the county.

 The county appealed the stipulation and the decision to the Cole County circuit court with all parties to the stipulation named as defendants.[2] The case was then submitted upon a stipulation of facts signed by the city and the county. The court signed the "Findings of Fact and Conclusions of Law" proposed by the city and entered its order dismissing all six counts of the county's petition. The court also found for St. Peters on its counterclaim, decreed that the city was not subject to the county's zoning and regulatory orders, and enjoined the county from enforcing any of its zoning order with respect to the city's proposed solid waste disposal area. Director Mehan and DNR were previously dismissed from the case by the court. This appeal follows.

Since this is a court tried case upon a stipulation of facts, our review is limited to whether the trial court drew the proper legal conclusions from the facts stipulated. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979); *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 398 (Mo.App. 1984). Therefore, we will only address the legal consequences of the stipulated facts. *Miskimen*, 684 S.W.2d at 744.

Our inquiry is limited to the dispositive issue as to whether the city has the authority to acquire land by condemnation outside its boundaries but within the boundaries of a county.[3] The city points to the power of eminent domain as its source of power to acquire such property and advances a number of arguments, which it claims gives it the right of condemnation outside of its corporate boundaries for a landfill. St. Charles county maintains that the lower court erred because there is no authority granting a fourth class city such as St. Peters the power of condemnation outside of its corporate limits, but if such a power exists, there is no authority to condemn for a landfill within the unincorporated area of the county.

 "The right of eminent domain is not inherent in municipalities and cannot be exercised by them without authority from the state." *State ex rel. Schwab v. Riley*, 417 S.W.2d 1, 3 (Mo. banc 1967). Section 37 of Article IV of the Missouri Constitution is concerned with the health and general welfare of the people of this state and specifies that "the general assembly may grant power with respect thereto to counties, cities and other political subdivisions of the state."

The city contends that the general assembly traces its authority to enact the Solid Waste Disposal Act to § 37 of Article IV which grants to the general assembly a right for cities to acquire property for the health and general welfare of its people. The city interprets this grant to include the power to condemn outside of its corporate limits. It points to § 260.220, which requires each city (and counties) to adopt and

---

**2.** On appeal Amici, who have never been a party to the present case, filed briefs contesting the jurisdiction of the Cole County Circuit Court. In *State ex rel. Missouri Dept. of Natural Resources v. Roper*, 824 S.W.2d 901, 903 (Mo. banc 1992), the Supreme Court held:

As there is a co-defendant residing in another county, the provisions of § 508.010(2), RSMo 1986, clearly and unambiguously state that, as a general rule, either Cole County or the other county—in this case, Boone County—would have venue over this suit.

In *Roper*, the court also reaffirmed the "legal residence" of DNR under Missouri Constitution, Article IV, §§ 12, 20 as Jefferson City, Cole County, Missouri. As a result, we find that venue was proper in Cole County, Missouri.

**3.** We do not consider whether property may be acquired outside a city's boundaries by means other than condemnation as provided under § 260.215.1 or to what extent such property will be subject to local zoning ordinances.

submit to DNR a solid waste management system within its boundaries. In order to enact the plan, cities are given the authority to "purchase all necessary equipment, acquire all necessary land, lease or otherwise acquire the right to use land or equipment." Section 260.215.1. St. Peters first argues that § 260.215 affords a city the right to condemn property outside of its boundaries for a landfill. However, the city acknowledges that § 260.215.1 does not expressly grant it the right to condemn land for a landfill.

■ If the right does not arise by express grant, then it may by "necessary implication." *Riley*, 417 S.W.2d at 3. In determining "necessary implication," the power of eminent domain should not be gathered from doubtful inferences, or from vague or ambiguous language, and every reasonable doubt should be resolved adversely to the existence of the right. 29 C.J.S. *Eminent Domain* § 23 (1992). Therefore, we must determine whether the right is necessarily implied from the wording of the Act. *Riley*, 417 S.W.2d at 3.

Section 260.215.1 provides in pertinent part:

> [E]ach city ... shall provide ... for the collection and disposal of solid wastes for those areas within its boundaries that are to be served by the solid waste management system; shall be responsible for implementing their approved plan required by section 260.220 as it relates to the storage, collection, transportation, processing, and disposal of their solid wastes; and may purchase all necessary equipment, acquire all necessary land, build any necessary buildings, incinerators, transfer stations, or other structures, lease *or otherwise* acquire the right to use land or equipment. (emphasis supplied).

■ The city cites *Riley* to support its argument that § 260.215.1 gives it the power to condemn all necessary land beyond its corporate limits. This argument is misplaced. Section 210.215.1 does not contain any language that expressly provides for the city to acquire land outside of its boundaries and *Riley* does not fill that

void. The section is limited to the power of eminent domain within its own boundaries.

The court in *Riley* construed § 71.680, which authorized the city to acquire land and equipment by "purchase, construction, lease, gift *or otherwise*." *Riley*, 417 S.W.2d at 4 (emphasis added). The court decided the term "or otherwise" as employed in § 71.680 granted the city of California the right to condemn land for a sewage disposal plant in an unincorporated area of Moniteau County. *Id.* The primary issue presented was whether the words "or otherwise" in § 71.680 gave fourth class cities the right of condemnation. The court was not concerned with whether the city could condemn outside of its corporate limits because § 71.680 specifically granted the city that right to condemn up to five miles outside of its boundaries.

Applying the rationale of *Riley* to § 260.-215.1 appropriately gives St. Peters the power of condemnation because of the use of the words "or otherwise," but it does not grant that right outside of its corporate limits. Therefore, the city cannot rely on *Riley* for the proposition that a fourth class city has the right to condemn outside its limits. *Riley* did not determine that point of law.

We are not prepared to extend their right of condemnation by necessary implication to areas outside of its boundaries. Our interpretation of these statutes is to be guided by the general statement of law that "[s]tatutes granting the right of eminent domain are to be strictly construed." *Riley*, 417 S.W.2d at 3. It is well settled that "[t]he right is not to be implied or inferred from vague or doubtful language but must be clearly given in express terms or by necessary implication." *Id.* Still, the doctrine of strict construction does not exclude a reasonable and sound construction of the statute under consideration. *State ex rel. Missouri Water Co. v. Bostian*, 365 Mo. 228, 280 S.W.2d 663, 666 (1955).

The city's authorization to "acquire all necessary land" for the collection and disposal of solid wastes "for those areas within its boundaries" is a restriction rather than a grant of authority to condemn land

outside the city's boundaries. The statute explicitly states that it is dealing only with "those areas within its boundaries." To convert that section into an grant of power to condemn real estate outside the city's boundaries, for disposal of waste outside the city's boundaries, requires a repudiation of the statutory language.

St. Peters also argues that § 260.209 provides the "necessary implication" for the city's right to condemn property outside its boundaries and, it argues, § 260.209, RSMo Supp.1990 [4] codifies the legislative intent that cities can acquire land outside their corporate limits. Section 260.209 provides in pertinent part:

> Any city ... that acquires real or personal property ... in an unincorporated area of a county, by condemnation, purchase, gift, lease, sale or otherwise to establish, operate, maintain, construct, improve, own, control of regulate waste to energy plants, incinerators, recycling centers, processing plants, composing areas, transfer stations, solid waste disposal area, treatment facilities, storage facilities, or other management areas ... shall be subject to and comply with and all zoning requirements and ordinances of the county in which the acquisition was made.

The city maintains that the legislature is merely acknowledging the city's right to acquire land outside its boundaries for solid waste disposal.[5] The county argues that the maxim *expressio unius est exclusio alterius* dictates that since the legislature has granted specific powers to certain cities and counties, but has denied such power to the remainder, the legislature's intent under the Act was to deny this power to the city.

When construing a statute consistent with the legislative intent, it is appropriate to consider its history, the presumption that the legislature had knowledge of the law, the surrounding circumstances, and the purpose and object to be accomplished. *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 803 (Mo. banc 1975). It is also "appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times." *Citizens Electric Corp. v. Director of Dept. of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989).

A reasonable interpretation of § 260.209 is that it recognizes that there are other statutes that provide for the condemnation of property by cities and counties. There are at least seven statutes that either expressly grant or have been interpreted to grant cities and counties the power to condemn property outside their own boundaries.[6] Two of those statutes, §§ 71.680 and 79.380, deal with fourth class cities' right of condemnation. These sections all secure to cities and counties the right of condemnation and in some of the statutes, the right to condemn outside the corporate limits of the particular political subdivision. Each statute limits the reason for the taking to certain areas, some of which include waste systems and integral parts of it. The legislature had knowledge of these statutes which gave cities and counties the power of condemnation when it enacted § 260.209 in 1990. Section 260.209 does not by necessary implication give St. Peters the power of eminent domain. It simply

4. The city readily accepts the first part of the statute which it claims codifies the legislative intent but denies the latter part of the statute as applicable, which mandates compliance with the county's zoning ordinances.

5. However, St. Peters argues that the effective date of § 260.209 precludes its application to its acquisition of the property in question. If the logic behind St. Peters' argument is followed one step further, it is interesting to find that the city had the right to condemn the property even

before the legislature acknowledged that the right existed under the Act.

6. Among the statutes granting such power are: § 64.320, RSMo Supp.1990 (first class counties with a charter form of government), § 64.325 (first class counties not having a charter form of government), § 64.490 (second, third and fourth class counties), § 71.680 (second, third and fourth class cities for public health), § 79.380 (any city for disease control), § 82.240 (constitutional charter cities), and § 82.790 (cities over 500,000).

takes notice of the statutes giving rise to the right to condemn.

Additionally, an inference can be drawn from the statute that the legislature's intent with respect to §§ 260.215.1 and 260.-209 is restrictive regarding the political entity's power when considering the approval of waste disposal sites. An example of this is found at § 260.205.6, which provides that an adjoining municipality has the authority to disapprove a land disposal facility located within one-half mile of its boundary. This reinforces the general presumption that the power of eminent domain conferred on a municipality is restricted to property lying within its territorial limits. 29 C.J.S. *Eminent Domain* § 24 (1992). As a result, we find that the Act contains neither an expressed provision nor a necessarily implied grant of eminent domain as to property outside the city's boundaries.

■■■ St. Peters next advances the argument that § 71.680 gives to second, third and fourth class cities, by express grant, the authority to condemn property up to five miles outside of its boundaries. The statute allows a city to acquire property for incinerators, purification plants and sewage disposal plants. The plain meaning of the wording of the statute grants an express power to condemn outside of its boundaries, as we have mentioned before. However, its authority is limited to incinerators, purification and sewage disposal plants. Landfills are absent from the statute. Landfills are neither incinerators, nor purification or sewage disposal plants as used in § 71.680 or as defined in § 260.200. The rule of statutory construction[7] that the express mention of one thing implies the exclusion of another dictates that landfills are not included within § 71.680. *Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160, 166 (1956). It is clear that "where special powers are expressly prescribed for the exercise of power, other powers and procedures are excluded." *Id.* at 166. The legislature has enumerated these components and in doing so has excluded all others including the authority to locate *landfills* outside of its city limits.

The city relies principally on three cases as authority to acquire land outside its corporate limits and its exemption from local regulations. These cases are: *Riley, State ex rel. Askew v. Kopp*, 330 S.W.2d 882 (Mo.1960), and *State ex rel. Gower v. Gee*, 573 S.W.2d 107 (Mo.App.1978). In each of these cases, the city located sewer treatment facilities outside of the city limits. Each case was decided under a specific grant of power to fourth class cities pursuant to §§ 71.680 and 79.380. They all have specific statutory authorization for the operation of their sewer treatment facilities and are therefore inapplicable to this case. None of these statutory sections provide a grant of power to St. Peters to locate a landfill outside of its city limits.

We have carefully reviewed the Solid Waste Disposal Act and nowhere does the legislature grant either cities or counties the power to condemn land for a landfill outside of their corporate boundaries. We find no reference to a power to condemn outside of condemnor's boundaries and we have not been cited to any provision of the statute that grants this power expressly or by necessary implication. Since § 71.680 is not applicable and since the Act does not expressly provide for acquiring land outside city boundaries, there are no provisions affording a city the right of condemnation of property outside its boundaries.

■■■ Finally, St. Charles contests the joint stipulation and order regarding the "completeness" of the St. Peters' permit application entered into by the city and DNR and the dismissal of DNR and its director from the case. Our holding reversing the trial court's determination that St. Peters had the right of eminent domain over property outside its corporate limits precludes review of DNR's actions. Appellate court opinions should be limited to those questions essential to proper disposition of the appeal. *State ex rel. Ellsworth Freight Lines, Inc. v. State Tax Comm'n*, 651 S.W.2d 130, 133 (Mo. banc 1983), *cert. denied*, 465 U.S. 1001, 104 S.Ct. 1019, 79 L.Ed.2d 223 (1984), *and reh'g denied*, 465

---

**7.** This rule is known as *expressio unius est exclusio alterius. Black's Law Dictionary* 521 (5th ed. 1979).

U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148 (1984). The actions of DNR regarding "completeness" of city's permit application is not essential to the determination of the ultimate issue on appeal—St. Peters' right of eminent domain over property outside its corporate limits.

Count II of St. Charles County's Second Amended Petition for Declaratory Judgment requests a declaration that the city has no power to acquire the property in St. Charles County for a landfill under a threat of eminent domain.

The court's judgment on Count II of plaintiff's Second Amended Petition for Declaratory Judgment is reversed and the case is remanded for entry of judgment on Count II in favor of St. Charles County and against the city of St. Peters prohibiting St. Peters from acquiring the designated property for a landfill by condemnation or the threat of it and for other orders consistent with this opinion.

All concur.